IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

TRACY S.,

           Plaintiff,

    v.                             Civil Action No.
                                     3:24-CV-542 (DEP)

FRANK BISIGNANO,
Commissioner of Social Security,[1]

           Defendant.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM     PETER A. GORTON, ESQ.
P.O. Box 89, 1500 East Main Street
Endicott, NY 13760-0089

FOR DEFENDANT

SOCIAL SECURITY ADMIN.         FERGUS KAISER, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

---

[1]     Plaintiff's complaint named Leland Dudek, in his official capacity as the Acting Commissioner of Social Security, as the defendant. On May 18, 2025, Frank Bisignano took office as the Commissioner of Social Security. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. See 42 U.S.C. § 405(g). The clerk is respectfully directed to amend the court's records to reflect this change.

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of a partially unfavorable administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[2] Oral argument was heard in connection with those motions on May 29, 2025, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

---

[2] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not disabled at certain relevant times, and thus is not entitled to benefits under the Social Security Act for that period, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated: June 20, 2025
Syracuse, NY

3

```
UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

**************************************************

TRACY SWAN,

                              Plaintiff,

                    -v-   24-cv542

LELAND DUDEK,

                              Defendant.

**************************************************


           TRANSCRIPT OF TELECONFERENCE
        BEFORE THE HONORABLE DAVID E. PEEBLES
                    May 29, 2025


FOR THE PLAINTIFF:

LACHMAN, GORTON LAW FIRM
BY:  Peter A. Gordon, Esq.
1500 East Main Street
Endicott, New York  13760


FOR THE DEFENDANT:

SOCIAL SECURITY ADMINISTRATION
BY:  Fergus J. Kaiser, Esq.
6401 Security Boulevard
Baltimore, Maryland  21235
```

SWAN v DUDEK - 24-cv-542

1               THE COURT:  Thank you.  Let me begin by
2   thanking both of you for excellent presentations.  Once
3   again you presented an interesting case involving an
4   interesting question of medical improvement and the
5   burden to be applied in deciding a case of medical
6   improvement in a single decision.
7               I have before me -- before I address the
8   merits, let me make sure that I broach the subject of
9   consent.  When this case was filed, it was originally
10  assigned to Magistrate Judge Christian F. Hummel.  The
11  consent form that was signed by Attorney Gordon on
12  behalf of the plaintiff consented to Judge Hummel's
13  jurisdiction.
14              I will ask now whether the plaintiff consents
15  to having me, to whom the case has been transferred,
16  hear and decide the case with direct appeal to the
17  Second Circuit Court of Appeals?
18              MR. GORTON:  We consent.
19              THE COURT:  Thank you.
20              THE COURT:  Thank you.
21              Plaintiff has commenced this proceeding
22  pursuant to 42 United States Code, Section 405(g) to
23  challenge a partially unfavorable determination
24  concluding that the plaintiff was disabled from
25  November 2, 2003, the alleged onset date included in her

```
 1    application for benefits, to August 13th, 2009, but
 2    experienced medical improvement and therefore was no
 3    longer disabled effective August 14th, 2009.
 4            The background is as follows, and I will not
 5    go into extensive detail that I think is unnecessary for
 6    my determination.
 7            Plaintiff was born in September of 1969, is
 8    currently 55 years of age.  She lives in Conklin,
 9    New York, and is a high school graduate.  Plaintiff
10    stopped working on November 2, 2003.
11            Plaintiff suffers from asthma as well as
12    porphyria, which I understand is a rare disorder
13    resulting from a buildup of natural chemicals called
14    porphyrins in the body.  Porphyrins are necessary to
15    make heme, part of the hemoglobin and hemoglobin is a
16    protein in red blood cells carrying oxygen to the body's
17    organs and issues.
18            Prophyria involves high-level buildups of
19    porphyrins.  They can cause major problems including
20    mainly in the nervous system and skin.
21            There are generally two types of prophyrias.
22    Acute prophyria, mainly affecting the nervous system,
23    and cutaneous prophyria, mainly affecting the skin,
24    although some types of prophyrias affect both nervous
25    system and the skin.  Some of the symptoms of porphyria
```

SWAN v DUDEK - 24-cv-542

1  include abdominal pain, skin rash, and nausea.
2          Procedurally, the plaintiff applied for
3  Title II benefits protectively on June 24th, 2001,
4  alleging onset date of November 2, 2003, and at 309 of
5  the administrative transcript alleging that she suffers
6  from porphyria, hemochromatosis, and asthma.
7          A hearing was conducted on March 17th, 2023,
8  by Administrative Law Judge Jeremy Eldred to address
9  plaintiff's applications for benefits.
10         Judge Eldred issued an unfavorable --
11 partially unfavorable decision on May 1, 2023, as I
12 indicated previously, finding disability for a closed
13 period ending August 13th, 2009.
14         On March 15th, 2024, the Social Security
15 Administrative Council denied plaintiff's application
16 for review.  There was new evidence submitted in
17 conjunction with the application for review but it was
18 deemed not to be relevant to plaintiff's claim; that's
19 at page 2 of the administrative transcript.
20         On April 19, 2024, this action was commenced
21 and is timely.
22         In his decision, ALJ Eldred applied the
23 five-step initial sequential test that we are all
24 familiar with for determining disability, concluding
25 disability that ended on August 13th, 2009.

                Lisa L. Tennyson, CSR, RMR, FCRR
              UNITED STATES DISTRICT COURT - NDNY

1           He then turned to the eight-step medical
2    improvement test and concluded that plaintiff was no
3    longer disabled effective August 14th, 2009, based upon
4    improvement of symptoms with serial phlebotomies, or
5    drawing of blood.
6           This case is subject to the Court's limited
7    review of determining whether correct legal principles
8    were applied and whether substantial evidence, defined
9    as such relevant evidence as a reasonable person would
10   conclude sufficient to support a fact is -- was --
11   supports the determination, it was a standard that was
12   articulated and explained by the Second Circuit Court of
13   Appeals in *Brault v Social Security Administration*
14   *Commissioner*, 683 F.3d 443 from 2012, and later
15   reiterated in several cases, including *Schillo v*
16   *Kijakazi*, 31 F.4th 64 from the Second Circuit Court of
17   Appeals 2022.
18          Plaintiff's contentions in this case are
19   threefold:  She cites an error in finding medical
20   improvement and no severe impairment after August 14th,
21   2009.  She claims that there was error in evaluation of
22   the medical opinions including of Dr. Khalil; and
23   thirdly, an error in failing to proceed through the full
24   eight-step test for medical improvement by not
25   conducting an RFC assessment and going through Steps 7

SWAN v DUDEK - 24-cv-542

1    and 8 which essentially mirror Steps 4 and 5 of the
2    sequential evaluation.
3            The regulations in this case provide that
4    after a commissioner makes a finding of disability, the
5    finding will be evaluated from time to time to determine
6    if the individual is still eligible for benefits, 42 USC
7    Section 423(f) and 20 CFR Section 404.1589.
8            Obviously the normal context in which medical
9    improvement appears is after a decision has been made
10   finding disability and a subsequent review yields a
11   finding of medical improvement.  Intellectually, I think
12   there's an argument to be made that this case could be
13   addressed fully using the step -- five-step sequential
14   determination.  It's a different situation, however, and
15   there's no Second Circuit guidance speaking to whether
16   the same analysis applies in a single decision such as
17   we're now presented with.
18           But absent Second Circuit guidance, I will
19   look to cases from this Court that show that in a
20   situation like we find ourselves in, the medical
21   improvement test should apply; *Hicks v Social Security*
22   *Commissioner*, 2015 Westlaw 58385 from the Northern
23   District of New York, January 5, 2015, Footnote 4 in
24   particular; also, *Dunford v Commissioner of Social*
25   *Security*, 2023 Westlaw 2242083 from the Northern

1  District of New York, February 27, 2023.
2           The test for finding medical improvement is in
3  part governed by 20 CFR Section 404.1594.  Under that
4  test, medical improvement is defined as follows:
5  Medical improvement is any decrease in the medical
6  severity of your impairments which was present at the
7  time of the most recent favorable medical decision that
8  you were disabled or continued to be disabled.
9           A determination that there has been a decrease
10 in medical severity must be based on improvement in the
11 symptoms, signs, and/or laboratory findings associated
12 with your impairments.
13          The eight-prong test for determining whether
14 there is continuing disability or instead medical
15 improvement is as follows:
16          One, determine whether the individual is
17 engaging in substantial painful activity.  Two, if
18 they're not, whether the claimant has an impairment or
19 combination of impairments which meets or equals the
20 list of impairments set forth in the commissioner's
21 regulations.
22          Three, if he or she does not, determine
23 whether there has been medical improvement shown by
24 decrease in medical severity.  Four, if there has been
25 medical improvement, determine whether the medical

1  improvement is related to the individual's ability to do
2  work in that it results in an increase in the claimant's
3  capacity to perform basic work activities.
4          Five is not relevant to this case.  It
5  addresses certain exceptions.
6          Six, if the medical improvement is related to
7  the ability to do work, determine whether the
8  individual's current impairments in combination are
9  severe.
10         Seven, if one or more impairment is severe,
11 the decisionmaker then assess the individual's ability
12 to perform in substantial gainful activity by assessing
13 his or her residual functional capacity, or RFC.
14         And eight, if the individual cannot perform
15 his or her past relevant work -- part of seven is
16 determining whether past relevant work can be performed
17 based on the RFC.  But eight, if the past relevant work
18 cannot be performed, there must be an assessment then of
19 whether the claimant can perform other work existing in
20 significant numbers in the national economy, 20 CFR
21 Section 404.1594(f).
22         As can be seen from this discussion, benefits
23 can be terminated if substantial evidence shows that
24 medical improvement restores the claimant's ability to
25 work; *Michael M. v Commissioner of Social Security*, 2019

1    Westlaw 530801 from the Northern District of New York,
2    February 11, 2019.  That is also established under
3    *Deronde v Astrue*, 2013 Westlaw 869489 from the Northern
4    District of New York, February 11, 2013.
5               So although the burden clearly is on the
6    commissioner when deciding medical improvement, the case
7    law is clear that a determination of medical improvement
8    and termination of benefits can be upheld if substantial
9    evidence supports the determination.  The burden clearly
10   is on the commissioner at the outset in *Denise C. v*
11   *Kijakazi*, 2023 Westlaw 6065949, September 18, 2023, and
12   *Michael M*, as I indicated previously, stands for that
13   proposition.
14              One of the issues addressed in *Denise C.*,
15   which I cited a moment ago, is whether medical
16   improvement can be shown through treatment records and
17   the answer in that case at least was yes, and I think
18   that that is entirely consistent with the regulations
19   defining medical improvement.
20              The basis for the finding of disability from
21   the date of onset until the end of the closed period was
22   that plaintiff's condition meets or equals listing 7.18
23   of the results of the disabling condition set forth in
24   the commissioner's regulations known as the listings.
25              Under 7.18, which is entitled Repeated

SWAN v DUDEK - 24-cv-542

1  Complications of Hematological Disorders, it shows that
2  to meet the listing, you must establish certain
3  complications and there are examples given, and those
4  complications must result in marked limitations of
5  either activities of daily living, of maintaining social
6  functioning, or in completing tasks in a timely manner
7  due to the deficiencies in concentration, persistence,
8  or pace.
9           The term marked is defined in
10 Section 7.00(g)(4) of part 404 subpart P, Appendix 1 of
11 the commissioner's regulations.  It is defined to mean
12 that the symptoms and signs of your hematological
13 disorder interfered seriously, and that is in italics,
14 with your ability to function.
15          Going through the sequential tests that I have
16 outlined, the commissioner at Step 1 found that
17 plaintiff had not engaged in substantial gainful
18 activity during the period from August 14th, 2009, until
19 the date of decision.  At Step 2 he found that
20 plaintiff's condition does not meet or equal listing
21 7.18 and substantial evidence, as I elaborated more
22 fully, probably supports that determination.
23          At Step 3, the administrative law judge found
24 there's been medical improvement and substantial
25 evidence based on my review of the treatment records in

SWAN v DUDEK - 24-cv-542

1  particular supports that.
2          Step 4, clearly the improvement relates to
3  plaintiff's ability to work.  Step 5 is not applicable.
4  Step 6 requires a determination of whether plaintiff
5  suffers from a severe medically determinable impairment,
6  which is defined kind of backwards in the regulations,
7  specifically, 20 CFR Section 404.1522, which is not a
8  severe impairment and provides as follows:
9          An impairment or a combination of impairments
10 is not severe if it does not significantly limit your
11 physical and mental ability to do basic work activities
12 which are defined in subpart B of that regulation to
13 include physical functions, capacity for seeing, hearing
14 and speaking, understanding, carrying out and
15 remembering simple instructions, use of judgment,
16 responding appropriately to supervision, coworkers and
17 usual or work situations, and dealing with changes in a
18 routine setting.
19         The case law indicates that the Step 6
20 determination of whether the medically determinable
21 impairment is severe essentially tracks Step 2 of the
22 five-step sequential analysis.
23         When my reading of *Colvin* 2016 Westlaw 447715
24 from the Northern District of New York, February 4,
25 2016, and *Michael M.* that I previously cited, also

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1  indicates that.  Again, clearly it is the commissioner's
2  burden at this juncture.
3          Step 3 -- I'm sorry.  Step 2, whether
4  sequential evaluation the -- requires a determination of
5  whether the impairment reaches a threshold of severity
6  where it significantly limits the physical and mental
7  ability to perform basic work activities, 20 CFR
8  Section 404.1522.
9          The requirement is de minimis, intended only
10 to screen out the truly weakest of cases; *McIntyre v*
11 *Colvin,* 758 F.3d 146, Second Circuit 2014.  However, the
12 mere presence of a disease or impairment or establishing
13 the person has been diagnosed or treated for a disease
14 or impairment is not by itself sufficient to render a
15 condition severe; *Nedzad O. v the Commissioner of Social*
16 *Security*, 577 F.Supp. 3d 37, the discussion appears at
17 43 to 44 of that decision, and it's from the Northern
18 District of New York 2021 from District Judge Hurd.
19         One of the exhibits in the record is an
20 opinion and also testimony, sworn testimony from
21 Dr. Khalil, plaintiff's oncologist.  In the testimony
22 which was taken I believe on March 31, 2023, Dr. Khalil
23 describes porphyria and the symptoms it can cause,
24 including headaches, nausea, vomiting, skin rash,
25 inkiness and abdominal pain.  At 277, he notes

1    that the impairment is chronic and cannot be cured.
2            The plaintiff has suffered a -- has challenged
3    the administrative law judge's analysis of Dr. Khalil's
4    decisions.  The discussion of the doctor's opinions
5    appears at pages 29 and 30 of the administrative
6    transcript.
7            Under the regulations which took effect
8    for applications for benefits filed after March 27,
9    2017, the administrative law judge must consider whether
10   a medical opinion is persuasive by primarily considering
11   whether the opinion is supported by and is consistent
12   with the record in the case, 20 CFR Section 404.1520(c).
13           The ALJ must articulate if his or her
14   determination as to how persuasive he or she finds all
15   of the medical opinions and explain how he or she
16   considered the supportability and consistency of those
17   opinions.
18           In this case, the opinion of Dr. Khalil was
19   found to be persuasive for the period prior to
20   August 13th, 2009, but not persuasive thereafter, and
21   the ALJ concluded that after August 13th, 2009, the
22   claimant has not had any medically determinable severe
23   impairment or combination of impairments which meets the
24   12-month durational requirement.
25           I agree with the commissioner that it

1   certainly appears that in determining persuasiveness,
2   the administrative law judge did consider the
3   supportability and consistency elements that are
4   required under the regulations.  Whether or not they
5   were specifically stated, I nonetheless find that a
6   searching review of the record reveals that the medical
7   opinion regulations were not violated; *Camille v Colvin*,
8   652 Federal App'x 25 in the Second Circuit, 2016.
9           I also find that the determination medical
10  improvement is -- has been met.  We have repeated
11  phlebotomists, which is, as I understand it, a blood
12  draw, but medical records show that plaintiff's
13  treatment has reflected -- has resulted in improvements
14  of symptoms.  I've looked at 14F, which is records from
15  Endless Mountain Health Systems; 12F, emergency
16  department visit; 16F, which is -- consists of treatment
17  records from Broome Oncology, April of 17, 2009, until
18  July 21, 2021, and again, 24F Endless Mountain Health
19  Systems.
20          The Broome County -- the Broome Oncology
21  records reveal that without periodic phlebotomies,
22  plaintiff's condition seems to flare.  At 744, for
23  example, which is from a treatment of April 16, 2015,
24  plaintiff noted that she had skin rash, hot flashes, and
25  headache but had not had a phlebotomy over the past

SWAN v DUDEK - 24-cv-542

1  year, and there are multiple, multiple indications of
2  improvement of symptoms with periodic phlebotomies.
3          For example, in January, March and May of 2021
4  at 780 to 782 of the administrative transcript,
5  plaintiff notes significant skin rash redress with
6  phlebotomy every two months.  That appears also at
7  page 934 of the administrative transcript.
8          So, in conclusion, I find that
9  the administrative law judge's determination of medical
10 improvement and that plaintiff's condition for medically
11 determinable impairment was no longer severe effective
12 August 14, 2009, is supported by substantial evidence
13 and because that finding was made at Step 6, there was
14 no need to address Steps 7 and 8 of the sequential
15 evaluation including the need to formulate an RFC.
16         So I will grant judgment on the pleadings to
17 the defendant, order dismissal of plaintiff's complaint,
18 and affirm the commissioner's determination in this
19 matter.
20         Thank you, both.  I hope you have a wonderful
21 afternoon.
22         MR. KAISER:  Thank you, your Honor.
23         MR. GORTON:  Thank you, your Honor.
24         (Proceeding concluded.)
                * * * * * * * * * * *

            Lisa L. Tennyson, CSR, RMR, FCRR
           UNITED STATES DISTRICT COURT - NDNY

# C E R T I F I C A T I O N

    I, Lisa L. Tennyson, RMR, CSR, FCRR, Official Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

                /s/ Lisa L. Tennyson
                Lisa L. Tennyson, RMR, RPR, FCRR

           Lisa L. Tennyson, CSR, RMR, FCRR
      UNITED STATES DISTRICT COURT - NDNY